# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN PRUNTY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CAMP PENDLETON & QUANTICO HOUSING LLC, et al., <br><br> Defendants. | Case No. 20-cv-572-MMA (AGS) <br><br> **ORDER DENYING DEFENDANT LINCOLN MILITARY PROPERTY MANAGEMENT, LP'S MOTION TO DISMISS** <br><br> [Doc. No. 3] |

On February 18, 2020 Plaintiffs Ryan Prunty ("Ryan"); Cynthia Prunty ("Cynthia"); Grant Prunty ("Grant"), a minor, by and through his guardian ad litem, Tony Vasquez; Garrett Prunty ("Garrett"), by and through his guardian ad litem, Tony Vasquez; and Granger Prunty ("Granger"), by and through his guardian ad litem, Tony Vasquez, (collectively, "Plaintiffs") filed a Complaint in the Superior Court of California, County of San Diego.[1] *See* Doc. No. 1-2 (Compl.).[2]  Plaintiffs allege nine causes of

---

[1] The Court refers to the individual Plaintiffs' first names for clarity.

[2] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

1

action: (1) negligence; (2) nuisance; (3) negligent misrepresentation; (4) negligent infliction of emotional distress; (5) breach of implied warranty of habitability; (6) breach of the implied covenant of quiet use and enjoyment; (7) rent abatement; (8) gross negligence; and (9) premises liability. *See id.* ¶¶ 51–143. On March 25, 2020, Defendants Camp Pendleton & Quantico Housing LLC ("CPQH"), LPC Pendleton Quantico PM LP ("LPC Pendleton"), and Lincoln Military Property Management LP ("Lincoln") (collectively, "Defendants") removed this action from the Superior Court of California, County of San Diego to the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1331, 1441, 1442, and 1446. *See* Doc. No. 1.

On April 1, 2020, CPQH and LPC Pendleton answered Plaintiffs' Complaint. *See* Doc. No. 4. On the same day, Defendant Lincoln filed the present motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 3. Plaintiffs filed an opposition to Lincoln's motion, and Lincoln replied. *See* Doc. Nos. 11, 12. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. Doc. No. 13. For the reasons set forth below, the Court **DENIES** Defendant Lincoln's motion to dismiss.

## I. B<small>ACKGROUND</small>[3]

Plaintiffs lived at "491 Calico Rd.[] Oceanside, California 92058 ('Leased Property')" as tenants from March 2017 through June 2019. Compl. ¶¶ 1, 2–5, 12. Plaintiffs were tenants under a written lease agreement signed in March 2017 and "executed by Defendants as owners/agents of the Leased Property." *Id.* ¶ 13.

---

[3] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

Plaintiffs allege that Defendant CPQH "was the owner, landlord, and/or lessor of the Leased Property." *Id.* ¶ 6.  Plaintiffs allege that Defendant LPC Pendleton "was the agent for CPQH with respect to ownership, management, leasing, maintenance, and/or attempted and negligent repair [of the] Leased Property." *Id.* ¶ 7.  Finally, Plaintiffs allege that Defendant Lincoln "was the agent for CPQH with respect to ownership, management, leasing, maintenance, and/or attempted and negligent repair [of the] Leased Property." *Id.* ¶ 8.[4]

On the lease agreement under Plaintiffs' signatures, there is a section indicating the "OWNER."  Doc. No. 3-2 at 5, 15, 27, 50.

> **OWNER**:
> CAMP PENDLETON & QUANTICO HOUSING, LLC, a Delaware limited liability company
> By:   LPC Pendleton Quantico PM LP, a Delaware limited partnership, its Authorized Agent
>
>        By:
>        Name:       Tracee Powell
>        Title:         LMH Representative

*E.g.*, Doc. No. 3-2 at 5.  Attachments to the lease agreement refer to an entity or service with the name "Lincoln."  For example, LPC Pendleton's community guidelines and policies refer residents to its "24-hour customer service center, Lincoln at Your Service, by dialing toll-free, 1-888-578-4141" for "after-hours maintenance emergencies." *Id.* at 20 (emphasis omitted).  The "Guidelines for Prevention and Treatment of Moisture/Mold in Residential Housing" require "[reporting] water and mold-related issues in accordance with these guidelines by going online at www.lincolnservicetrack.com or by calling

---

[4] As noted below, Defendant Lincoln disputes Plaintiffs' claims that it had a contractual relationship with Plaintiffs, had ownership of the Leased Property, or had a role in the Leased Property's maintenance or operation.  *See* Doc. No. 3-1 at 2.

3

Lincoln At Your Service at 1-888-578-4141." *Id.* at 37; *see also id.* at 38.  Additionally, the "USMC Resident Energy Conservation Program ('RECP') Addendum" notes that "an updated schedule of applicable late fees can be found at www.lincolnrecp.com." *Id.* at 49.  On the "Move-In Condition Form" and under the "Resident(s) Signature" space is an unsigned line reserved for "Lincoln Military Housing, Agent." *Id.* at 51.  Finally, the "Assumption of Risk and Waiver and Release of Liability" form refers to "Lincoln Military Housing" multiple times.  *Id.* at 54.

In March 2017, Plaintiffs allege that they discovered several issues with the Leased property: "dirt and animal hair imbedded in the floor, dog feces inside the house, a maggot infestation underneath the house, and mold visible in the closets and within the windowsills of the Leased Property."  Compl. ¶ 16.  Plaintiffs reported these findings to Lincoln.  *Id.*  Lincoln responded that the mold was "cosmetic" and instructed Plaintiffs to clean the mold.  *Id.* ¶ 18.  Lincoln did not investigate or provide a report on the mold's cause or source.  *Id.* ¶ 19.

Additionally, in March 2017, "Plaintiffs discovered a spewing water pipe attached to the kitchen sink," which they reported to Lincoln.  *Id.* ¶ 20.  Lincoln sent a maintenance worker to repair the pipe and water damage; the worker addressed the damage by placing fans to dry the affected areas.  *Id.* ¶¶ 20–21.  Mold continued to grow, for example, under "under the dishwasher and along wood paneling underneath the sink."  *Id.* ¶ 23.

The conditions on the Leased Property impacted Plaintiffs' health, especially Grant, who was two years old when the lease began.  *Id.* ¶¶ 24, 25.  After moving into the Leased Property, Grant, Garrett, and Granger "suffered from wheezing, coughing and sneezing."  *Id.* ¶ 26.  In January 2019, Grant was hospitalized for one month because of a swollen lymph node, and he visited his pediatrician several times, who prescribed medication.  *Id.* ¶¶ 28, 29.

By February 2019, "the Leased Property's leaking roof and walls had deteriorated so much that water was pooling in the living room area."  *Id.* ¶ 31.  Lincoln's

maintenance responded by sending a worker who said he would return with blowers to dry the wet area; however, he never returned with the blowers. *Id.* ¶ 31. Several days later, Lincoln dispatched a second worker to examine the damage. *Id.* ¶ 32. "The second maintenance man, upon finding the numerous areas still damp from the intruding moisture, tore out the sheetrock in the living room, exposing the mold growth that stood roughly 3 feet high." *Id.* After the worker left the area exposed, Ryan covered the exposed mold with trash bags. *Id.* ¶ 33.

After discovering the mold, "Plaintiffs were forced to take up residence in Marine Corps Lodge 5, where they were placed in temporary housing where all fi[v]e (5) Plaintiffs were required to share a space with only two (2) beds." *Id.* ¶ 35. Two days later, Plaintiffs were moved to "temporary housing." *Id.* ¶ 36. The temporary housing contained "numerous health hazards including a lack of potable water throughout the home, dog urine and feces on the property and the accompanying nauseating smell, and cat hair throughout the home." *Id.* ¶ 37. Because Ryan and Garrett are allergic to cats, they had "a highly uncomfortable allergic reaction." *Id.* ¶ 38. After reporting the temporary housing conditions, Lincoln responded that pets were not permitted on the property and, thus, "nothing would be done to address the issue." *Id.* ¶ 39. Because of the severity of the allergic reactions, Plaintiffs left the temporary housing to stay with family two hours north of Camp Pendleton. *Id.* ¶ 40.

In March 2019, Ryan purchased a mold test kit from Lowes, and "[t]he results of the test showed that Plaintiffs had been exposed to two types of mold, one common airborne mold, and a second, more harmful mold type of the Penicillium family." *Id.* ¶ 41. Plaintiffs moved back into the Leased Property in March 2019 after "mold abatement." *Id.* ¶ 43. After the mold abatement, Plaintiffs' health issues improved. *Id.* ¶ 44.

After Plaintiffs expressed concerns to Lincoln "about the leaks and clogging causing some environmental hazard that was affecting the health and quality of life of the

residents," Defendants did not investigate further, and they did not compensate Plaintiffs. *Id.* ¶¶ 45–46.  In June 2019, Plaintiffs moved out of the Leased Property.  *Id.* ¶ 48.

Plaintiffs bring nine causes of action against Defendants relating to the Leased Property.  *Id.* ¶¶ 51–143.  Defendant Lincoln moves to dismiss for failure to state a claim because it "had no contractual or lease relationship with Plaintiffs, did not own the Property, and is not alleged in more than a conclusory fashion to have had any role in the Property's maintenance or operation."  *See* Doc. No. 3-1 at 2.

## II. LEGAL STANDARDS

### A. Judicial Notice

Generally, a district court's review on a 12(b)(6) motion to dismiss is "limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)).  However, "a court may take judicial notice of matters of public record," *id.* at 689 (internal quotations omitted), and of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125–26; *see also* Fed. R. Evid. 201.  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see also Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986) (citing *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956)).

### B. Motion to Dismiss for Failure to State a Claim

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee*, 250 F.3d at 688. "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (citing *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996)).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

Additionally, allegations of fraud or mistake require the pleading party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The context surrounding the fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "'Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.' A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'" *Kearns*, 567 F.3d at 1124 (first quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); and then quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*).

### III. DISCUSSION

**A. Judicial Notice**

To support its motion to dismiss and pursuant to Federal Rule of Evidence 201, Defendant Lincoln requests that the Court take judicial notice of the lease agreement for the Leased Property (Doc. No. 3-2 at 4–55) and the fact that "[t]he United States of America is the owner of the Property, which is part of the Marine Corps Base Camp Pendleton military installation." Doc. No. 3-2 at 2.

Plaintiffs refer to the lease agreement throughout their Complaint. *See, e.g.*, Compl. ¶¶ 13, 73, 101, 102, 112, 116, 118, 134, 139, 142. Moreover, Plaintiffs do not

appear to dispute Lincoln's request for judicial notice.  Accordingly, the Court **GRANTS** Defendant Lincoln's request for judicial notice of the lease agreement.[5]

As to the ownership of the Leased Property, the Court finds that the United States' status as the property owner is generally known within this district and capable of determination by treaty, statute, and country records, which Lincoln refers to in its request.  *See* Fed. R. Evid. 201(b).  As with Lincoln's first request, Plaintiffs do not appear to dispute this request for judicial notice.  Accordingly, the Court **GRANTS** Defendant Lincoln's request for judicial notice of the fact that United States is the owner of the Leased Property.

**B. Motion to Dismiss for Failure to State a Claim**

Defendant Lincoln argues that it "is not identified in the lease as having any role with respect to the Property."  Doc. No. 3-1 at 3; *see also* Doc. No. 12 at 2.  Lincoln further argues that Plaintiffs fail to differentiate between the Defendants and, thus, fail to meet Rule 8's pleading requirement as well as the heightened pleading requirement for misrepresentation claims.  Doc. No. 3-1 at 4, 5; *see also* Doc. No. 12 at 3, 4.  In particular, Lincoln asserts "Plaintiffs' attempt to lump [Lincoln] together with the other Defendants, [CPQH] and [LPC Pendleton], without any specific factual claims against [Lincoln], warrants dismissal of their claims against [Lincoln]."  Doc. No. 3-1 at 5.

Plaintiffs respond that their claims are viable regardless of whether the lease agreement mentions Lincoln.  *See* Doc. No. 11 at 2.  Plaintiffs point to the "Parties" section of their Complaint that alleges "the nature of the entity Defendants, their connection to one another, and their connection to Plaintiffs' claims."  *Id.* at 3 (referring to Compl. ¶¶ 6–8).  Plaintiffs further argue that their first, second, third, fourth, eighth, and ninth causes of action "are not dependent upon the existence of the lease, nor

---

[5] Regardless of Defendant Lincoln's request for judicial notice of the lease agreement, the Court may consider the document under the incorporation-by-reference doctrine.  *See Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1063 (S.D. Cal. 2019) (quoting *Ritchie*, 342 F.3d at 908).

[Lincoln's] inclusion in said lease." *Id.* As to Rule 8 pleading requirements, Plaintiffs argue that they clearly explain Defendants' connection to each other and give proper notice to Defendant Lincoln regarding the basis for Plaintiffs' claims. *See id.* at 4, 5.

The Court finds that the lack of a landlord-tenant relationship between Lincoln and Plaintiffs does not foreclose a possible claim against Lincoln. As Plaintiffs note, several of their claims do not depend on the existence of a contractual relationship. Further, the Court finds that Plaintiffs do not make undifferentiated, group-pleading allegations against Defendants. Although Lincoln points to the causes of action sections of the Complaint to demonstrate undifferentiated pleading, *see* Doc. No. 3-1 at 4 (citing Compl. ¶¶ 51–143), it overlooks the previous "Factual Allegations" section that details specific allegations against Lincoln in paragraphs twelve through fifty, which are expressly incorporated in the sections for each of the nine causes of action, *see* Compl. ¶¶ 51, 74, 82, 92, 99, 111, 115, 128, 136. Accordingly, the Court finds that dismissal is unwarranted at this time.[6]

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Lincoln's motion to dismiss.

**IT IS SO ORDERED**.

Dated: May 1, 2020

HON. MICHAEL M. ANELLO
United States District Judge

---

[6] Given that Defendant Lincoln does not move to dismiss on claim-specific grounds, the Court does not address whether Plaintiffs have properly alleged each individual cause of action against Lincoln. The Court merely finds that Plaintiffs may bring their action against Defendant Lincoln even if Lincoln is not referenced in the lease agreement and that Plaintiffs have not made undifferentiated, group-pleading allegations against Lincoln. Plaintiffs have alleged sufficient underlying facts to give Defendant Lincoln notice and the ability to defend itself. *See Starr*, 652 F.3d at 1216.