**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RYAN PRUNTY, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>CAMP PENDLETON & QUANTICO HOUSING LLC, and LPC PENDLETON QUANTICO PM LP,<br><br>　　　　　　　　　　Defendants. | Case No. 20-cv-572-MMA (AGS)<br><br>**ORDER GRANTING PLAINTIFFS' PETITION TO CONFIRM MINORS' COMPROMISES**<br><br>[Doc. No. 32] |

Plaintiffs Ryan Prunty ("Ryan") and Cynthia Prunty ("Cynthia") petition the Court to confirm minors' compromises on behalf of three minor plaintiffs in this action: Grant Prunty ("Grant"), Garrett Prunty ("Garrett"), and Granger Prunty ("Granger") (collectively, "Minor Plaintiffs").[1] *See* Doc. Nos. 32.[2] The three Minor Plaintiffs are represented by their grandfather Tony Vasquez ("Vasquez") as their guardian ad litem. *See* Doc. No. 1-2 (Compl.) ¶¶ 3–5; *see also* 1-3 at 16–18 (Garrett's guardian ad litem

---

[1] The Court refers to the individual Plaintiffs' first names for clarity.

[2] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

1

application); Doc. No. 1-4 at 1–3 (Granger's guardian ad litem application); Doc. No. 1-4 at 4–6 (Grant's guardian ad litem application).  Plaintiffs Ryan and Cynthia represent that Defendants Camp Pendleton & Quantico Housing LLC ("CPQH") and LPC Pendleton Quantico PM LP ("LPC Pendleton") (collectively, "Defendants") do not oppose the motion.  *See* Doc. No. 32 at 2; Clark Decl., Doc. No. 32-1 ¶ 19.  For the reasons set forth below, the Court **GRANTS** Plaintiffs' petition.

## I. BACKGROUND

Plaintiffs lived at "491 Calico Rd.[] Oceanside, California 92058 ('Leased Property')" as tenants from March 2017 through June 2019.  Compl. ¶¶ 1, 2–5, 12.  Plaintiffs were tenants under a written lease agreement signed in March 2017 and "executed by Defendants as owners/agents of the Leased Property."  *Id.* ¶ 13.

In March 2017, Plaintiffs allege that they discovered several issues with the Leased property: "dirt and animal hair imbedded in the floor, dog feces inside the house, a maggot infestation underneath the house, and mold visible in the closets and within the windowsills of the Leased Property."  *Id.* ¶ 16.  Plaintiffs reported these findings to Lincoln Military Property Management, LP ("Lincoln").  *Id.*  Lincoln responded that the mold was "cosmetic" and instructed Plaintiffs to clean the mold.  *Id.* ¶ 18.  Lincoln did not investigate or provide a report on the mold's cause or source.  *Id.* ¶ 19.

Additionally, in March 2017, "Plaintiffs discovered a spewing water pipe attached to the kitchen sink," which they reported to Lincoln.  *Id.* ¶ 20.  Lincoln sent a maintenance worker to repair the pipe and water damage; the worker addressed the damage by placing fans to dry the affected areas.  *Id.* ¶¶ 20–21.  Mold continued to grow, for example, under "under the dishwasher and along wood paneling underneath the sink."  *Id.* ¶ 23.

The conditions on the Leased Property impacted Plaintiffs' health, especially Grant, who was two years old when the lease began.  *Id.* ¶¶ 24, 25.  After moving into the Leased Property, Grant, Garrett, and Granger "suffered from wheezing, coughing and sneezing."  *Id.* ¶ 26.  In January 2019, Grant was hospitalized for one month because of a

swollen lymph node, and he visited his pediatrician several times, who prescribed medication. *Id.* ¶¶ 28, 29.

By February 2019, "the Leased Property's leaking roof and walls had deteriorated so much that water was pooling in the living room area." *Id.* ¶ 31. Lincoln's maintenance responded by sending a worker who said he would return with blowers to dry the wet area; however, he never returned with the blowers. *Id.* ¶ 31. Several days later, Lincoln dispatched a second worker to examine the damage. *Id.* ¶ 32. "The second maintenance man, upon finding the numerous areas still damp from the intruding moisture, tore out the sheetrock in the living room, exposing the mold growth that stood roughly 3 feet high." *Id.* After the worker left the area exposed, Ryan covered the exposed mold with trash bags. *Id.* ¶ 33.

After discovering the mold, "Plaintiffs were forced to take up residence in Marine Corps Lodge 5, where they were placed in temporary housing where all fi[v]e (5) Plaintiffs were required to share a space with only two (2) beds." *Id.* ¶ 35. Two days later, Plaintiffs were moved to "temporary housing." *Id.* ¶ 36. The temporary housing contained "numerous health hazards including a lack of potable water throughout the home, dog urine and feces on the property and the accompanying nauseating smell, and cat hair throughout the home." *Id.* ¶ 37. Because Ryan and Garrett are allergic to cats, they had "a highly uncomfortable allergic reaction." *Id.* ¶ 38. After reporting the temporary housing conditions, Lincoln responded that pets were not permitted on the property and, thus, "nothing would be done to address the issue." *Id.* ¶ 39. Because of the severity of the allergic reactions, Plaintiffs left the temporary housing to stay with family two hours north of Camp Pendleton. *Id.* ¶ 40.

In March 2019, Ryan purchased a mold test kit from Lowes, and "[t]he results of the test showed that Plaintiffs had been exposed to two types of mold, one common airborne mold, and a second, more harmful mold type of the Penicillium family." *Id.* ¶ 41. Plaintiffs moved back into the Leased Property in March 2019 after "mold

abatement." *Id.* ¶ 43.  After the mold abatement, Plaintiffs' health issues improved.  *Id.* ¶ 44.

After Plaintiffs expressed concerns to Lincoln "about the leaks and clogging causing some environmental hazard that was affecting the health and quality of life of the residents," Defendants did not investigate further, and they did not compensate Plaintiffs. *Id.* ¶¶ 45–46.  In June 2019, Plaintiffs moved out of the Leased Property.  *Id.* ¶ 48.

Plaintiffs brought nine causes of action against Defendants relating to the Leased Property: (1) negligence; (2) nuisance; (3) negligent misrepresentation; (4) negligent infliction of emotional distress; (5) breach of implied warranty of habitability; (6) breach of the implied covenant of quiet use and enjoyment; (7) rent abatement; (8) gross negligence; and (9) premises liability.  *See id.* ¶¶ 51–143.  The action has settled.  *See* Doc. No. 27.  Plaintiffs Ryan and Cynthia now moves to approve the minors' compromises.  *See* Doc. No. 32.

## II. LEGAL STANDARD

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors.  *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011); *see also* Fed. R. Civ. P. 17(c).  "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'"  *Id.* (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)).  District courts are instructed to "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases."  *Id.* at 1181–82.  "Most importantly, the district court should evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard."  *Id.* at 1182.  "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their

claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." Under the Civil Local Rules, "[n]o action by or on behalf of a minor or incompetent, or in which a minor or incompetent has an interest, will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment." CivLR 17.1(a).

### III. DISCUSSION

Plaintiff states that "[t]he settlement in this case is $67,000. The proposal is for the settlement to be split as follows: 69.46% ($46,540.00) to [Ryan] and [Cynthia], collectively; 10.18% ($6,820.00) to [Grant]; 10.18% ($6,820.00) to [Garrett]; and 10.18% ($6,820.00) to [Granger]." Doc. No. 32 at 3; Clark Decl., Doc. No. 32-1 ¶ 13. After subtracting costs and fees from the settlement to be paid to the Minor Plaintiffs, "each [M]inor Plaintiff will receive a total net settlement of $4,854.61." Doc. No. 32 at 3. Vasquez was present during the settlement negotiations and has approved the settlement's terms. Clark Decl., Doc. No. 32-1 ¶ 15. Ryan and Cynthia plan to deposit "the $4,854.61 for each minor Plaintiff into their respective insured Navy Federal Credit Union bank account." Doc. No. 32 at 3; *see also* Clark Decl., Doc. No. 32-1 ¶ 14. The Court finds that the proposed minors' compromises for Grant, Garrett, and Granger are fair and reasonable in light of their claims. *See Doe v. Lincoln Military Prop. Mgmt. LP*, No. 3:20-cv-00224-GPC (AHG), 2020 WL 5587488, at *6 (S.D. Cal. Sept. 18, 2020), *report and recommendation adopted*, No. 3:20-cv-00224-GPC (AHG), 2020 WL 5810168 (S.D. Cal. Sept. 30, 2020).

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's petition, **APPROVES** the minors' compromises, and **ORDERS** the following:

1. The Minor Plaintiffs shall receive the following net settlement amount: $4,854.61 to Grant; $4,854.61 to Garrett; and $4,854.61 to Granger.

2. Within 72 hours of receipt of a check payable to the order of Ryan Prunty and Cynthia Prunty as trustees for the Minor Plaintiffs, guardian ad litem Tony Vasquez shall

deposit the check for the Minor Plaintiffs into a blocked account at a federally insured bank or credit union. The blocked account in this matter is to be opened solely for the benefit of the Minor Plaintiffs in this case and such funds placed therein cannot be accessed by anybody other than the respective Minor Plaintiffs upon reaching the age of majority. Tony Vasquez shall have no right to access any of the funds in such blocked account for any reason.

3. Guardian ad litem Tony Vasquez must deliver to each depository at the time of deposit a copy of this order.

4. No withdrawals of principal or interest may be made from the blocked accounts without a written order under this case name and number, signed by a judge, and bearing the seal of this Court, until the respective minors attain the age of 18 years. When the respective minor attains the age of 18 years, the depository, without further order of this court, is authorized and directed to pay by check or draft directly to the former minors, upon proper demand, all moneys including interest deposited under this order. The money on deposit is not subject to escheat.

5. Guardian ad litem Tony Vasquez is authorized and directed to execute any and all documents reasonably necessary to carry out the terms of settlement.

6. Bond is waived.

7. In light of the settlement, the Court **INSTRUCTS** the parties to adhere to the Magistrate Judge's order regarding the filing of a joint motion to dismiss. *See* Doc. No. 27.

**IT IS SO ORDERED**.

Dated: October 16, 2020

HON. MICHAEL M. ANELLO
United States District Judge